# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLESETTA D. SPARKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-18-343-SPS |
| | ) |
| COMMISSIONER of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Charlesetta D. Sparks requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was forty-eight years old at the time of the administrative hearing (Tr. 41). She completed the twelfth grade and has previously worked as a nurse aid and janitor (Tr. 21, 237). The claimant alleges that she has been unable to work March 31, 2014, due to back problems, pain in right shoulder and arm, headaches, depression, neck problems, anxiety attacks, high blood pressure, and thyroid problems (Tr. 236).

**Procedural History**

On January 5, 2015, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Susan W. Conyers conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 4, 2017 (Tr. 15-22). The Appeals Council reviewed the ALJ's decision, adopting the ALJ's decision that the claimant was not disabled, but finding the claimant's RFC differed between the ALJ's hearing decision and the question posed to the vocational expert ("VE") at the hearing, and therefore correcting that discrepancy. Accordingly, the Appeals Council decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b) (Tr. 19). She then concluded that although the

claimant could not return to her past relevant work, she was nevertheless not disabled because there was work that she could perform, *e. g.*, housekeeping cleaner, self-service store attendant, and cashier II (Tr. 21-22). On review, the Appeals Council determined that the claimant had the RFC to perform the full range of the light exertional level, but that she should avoid reaching overhead with the non-dominant right upper extremity although she could use the non-dominant right upper extremity for occasional reaching in all other directions and occasional handling, and that she could frequently use the right hand for fine manipulation (Tr. 7). The Appeals Council adopted the VE's testimony as to the three jobs she could perform, then determined that the claimant was not disabled according the Rule 202.21, Table No. 2 of 20 C.F.R. Part 404, Subpart P, Appendix 2, also referred to as "the Grids." (Tr. 7).

## Review

The claimant contends that the Appeals Council and ALJ erred in failing to resolve a conflict between VE testimony and the Dictionary of Occupational Titles (DOT), and that the ALJ erred by failing to properly evaluate her subjective statements. Neither of these contentions have merit, and the decision of the Commissioner should therefore be affirmed.

Both the ALJ and the Appeals Council found that the claimant had the severe impairments of right shoulder degenerative joint disease status post arthroscopic surgery, mild degenerative joint disease of the cervical and lumbar spine, degenerative joint disease of the thoracic spine, osteoarthritis, neuropathy, bilateral hip pain (the claimant sits more on the left than the right), obesity, and sacroiliitis treated with injections (Tr. 6, 17). The

medical evidence relevant to this appeal reflects that the claimant was treated in 2011 for pain in her neck and right shoulder as part of a worker's compensation claim. On September 14, 2011, Dr. Matt Dumigan found that the claimant had reached maximum medical improvement following a right shoulder arthroscopic subacromial bursectomy and with cervical spondylosis with mild central and foraminal stenosis (Tr. 315). He found her residual discomfort likely to be related to an underlying spine problem, for which he was not treating her. He kept previous restrictions of limitations of the right arm to push/pull up to five pounds, lift/carry up to five pounds, and no reaching overhead or away from the body (Tr. 315, 317).

In March 2014, the claimant presented to the emergency room with complaints of neck and back pain radiating into her legs after moving a bed, and she did so again in April 2014 (Tr. 404, 413). She was then sent to physical therapy for her low back pain. On May 2, 2014 she reported pain into her right hip and complained of the shoulder and neck hurting but seemed to feel better after performing a limited range of modalities (Tr. 351). She also experienced some sort of gluteal strain, for which trigger points were relieved by manual therapy and pain was reduced within a week (Tr. 352-355). At her discharge from physical therapy, the claimant had not progressed with physical therapy due to poor pain control, and she was referred to follow up with her PCP (Tr. 359-360).

In February 2015, the claimant was found to have a tendon tear in her right shoulder, requiring repair (Tr. 483, 520-521, 564). In September 2015, the claimant was diagnosed with sacroiliitis, and underwent a sacroiliac intraarticular steroid injection (Tr. 577). Following that injection, she reported a pain level of 1/10 (Tr. 618).

A December 2015 MRI of the cervical spine revealed mild multilevel degenerative changes producing mild neural foraminal narrowing (Tr 636). The claimant was again referred for physical therapy for neck and back pain in February 2016 for eight weeks, during which the time the claimant was encouraged to not stay in bed all day, but to get up and move to decrease her pain (Tr. 646-659). She again showed minimal progress in therapy, admitting to only doing pool exercises and not land exercises (Tr. 657). She was instructed in how to continue the exercises on her own (Tr. 658). In September 2016, the claimant again received a steroid injection for her right shoulder, with the treating doctor noting that the MRI did not show anything that could help her from a surgical standpoint (Tr. 682). She was advised to continue with pain management (Tr. 682). On September 28, 2016, she reported pain at 8/10 related to her back and hips (Tr. 684).

A State reviewing physician determined that the claimant could perform light work but that she should be limited to frequent reaching (Tr. 80-81). On reconsideration, this was affirmed, except the limitation to frequent reaching was specified to apply only to right overhead reaching (Tr. 92-93).

At the administrative hearing, the claimant testified as to pain related to her neck and back impairments, as well as injections for her right shoulder, stating that the injections helped some but the pain relief did not last long (Tr. 43). She testified that she had difficulty going to parent/teacher conferences and things like that at school for her child because she has difficulty sitting (Tr. 48). She stated that she has trouble bending and reaching, then confirmed that she was left-handed but that the problem was with her right shoulder (Tr. 50). She testified that she could lift twenty pounds with her left arm, and five

or ten with her right, and stated she believed her doctor had limited her to that on the right (Tr. 54). She further testified that injections had not helped her right shoulder, and that she had also received injections in her lower back (Tr. 58).

Additionally, the ALJ elicited testimony from a vocational expert ("VE") to determine if there were jobs the claimant could perform with her limitations (Tr. 66-69). The ALJ posited a hypothetical in which an individual with the age, education, and work history of the claimant would have the RFC to "perform the full range of work at the light exertional level," but should "avoid reaching overhead with the non-dominant -- right upper extremity; the individual can use the non-dominant right upper extremity for occasional reaching in all direction and occasional handling; this individual can frequently use the right hand for fine manipulation" (Tr. 66). The ALJ and VE clarified that the claimant was left-handed, making the right hand her non-dominant hand (Tr. 67). In response to the ALJ's questions, the VE indicated that the claimant could not perform any of her past work but identified three light jobs such a person could perform: (i) housekeeping cleaner, DICOT § 323.687-014; (ii) self-service store attendant, DICOT § 299.677-010; and (iii) cashier II, DICOT § 211.462-010 (Tr. 67). After the VE named the first job of housekeeping cleaner, the ALJ asked the VE specifically if that included occasional handling, and the VE responded that it was occasional handling for the non-dominant hand (Tr. 67). The ALJ later asked, "So essentially, if this individual is—was—would be one-handed, those three jobs would still be available at the light exertional level?" and the VE responded that they would not be available if they could *never* use the non-dominant, but remained as long as there was no more than occasional use (Tr. 68). The

ALJ asked, and the VE responded that her testimony was consistent with the Dictionary of Occupational Titles ("DOT") (Tr. 69).

In her written decision, the ALJ summarized the claimant's hearing testimony and much of the medical evidence in the record. As to the claimant's subjective statements in relation to the medical evidence, the ALJ noted discrepancies including: (i) the 2011 MRI of the cervical spine revealing only mild bilateral foraminal stenosis without significant cord compression and minimal degenerative disc disease as the remaining cervical disc levels, (ii) the 2014 MRI showing only mild central canal and neural foraminal stenosis, (iii) physical examination was normal upon numerous examinations between 2014 and 2015, (iv) steroid injections reduced her pain to a one out of ten in October 2015, (v) an October 2015 MRI also showed only mild degenerative joint disease, and (vi) 2016 physical examinations showed that the claimant had 75% range of motion of the cervical spine and normal flexion except for the right shoulder (Tr. 20-21). The ALJ ultimately determined that the claimant was not disabled.

First, the claimant asserts that the ALJ erred in identifying jobs she could perform, and that the error was adopted by the Appeals Council, because there was a conflict between the information provided by the VE and the DOT. Under Social Security Ruling 00-4p, "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was*

*identified*." 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added]. Although the VE did not identify any conflict between her testimony and the DOT, the claimant contends there is a conflict as to the reaching requirements of each job identified. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

Each job identified by the requires frequent reaching according to the DOT. *See* DICOT §§ 323.687-014, 299.677-010, 211.462-010. The claimant asserts that this requirement is incompatible with the RFC adopted by the Appeals Council which limited the reaching of the non-dominant upper extremity in a couple of ways. The Court agrees with the Commissioner, however, that there is not a conflict that the ALJ failed to identify. Here, the ALJ specifically clarified with the VE that each of the jobs identified was compatible with the further reaching limitations related to the non-dominant upper extremity. As such, the Court therefore finds that the VE's testimony did not conflict with the DOT and instead clarified that there was no conflict given the RFC proposed in this case, thus satisfying the ALJ's (and Appeals Council's) obligation under *Haddock*.

Next, the claimant contends that the ALJ erred in assessing her subjective statements for consistency because the ALJ made no specific findings and failed properly account for her impairments, despite the medical evidence showing a nexus between her impairments and her subjective allegations. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[2] Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012), citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[3] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the

---

[2] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[3] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-4 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). This Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

The ALJ's written opinion is summarized above, and the Court notes that the ALJ concluded as usual that "the claimant's statements concerning the intensity, persistence, and limiting effects are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 20). In making such a conclusion, however, the ALJ noted several inconsistencies between the claimant's subjective statements of pain and the evidence of record, including: (i) the 2011 MRI of the cervical spine revealing only mild bilateral foraminal stenosis without significant cord compression and minimal degenerative disc disease as the remaining cervical disc levels, (ii) the 2014 MRI showing only mild central canal and neural foraminal stenosis, (iii) physical examination was normal upon numerous examinations between 2014 and 2015, (iv) steroid injections reduced her pain to a one out of ten in October 2015, (v) and October 2015 MRI also showed only mild degenerative joint disease, and (vi) 2016 physical examinations showed that the claimant had 75% range of motion of the cervical spine and normal flexion except for the right shoulder (Tr. 20-21). Thus, the ALJ linked her subjective statement analysis to the evidence and provided specific reasons for the determination. There is no indication

here that the ALJ misread the claimant's medical evidence taken as a whole, and her evaluation of the claimant's subjective statements is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

**Conclusion**

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 5th day of March, 2020.

_____

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**